MARTIN RUANE, ADMINISTRATOR OF PATRICK RUANE, DECEASED, RESPONDENT, v. ERIE RAILROAD COMPANY, APPELLANT.

Argued March 13, 1916—Decided March 14, 1916.

On appeal from the Supreme Court, in which court the following *per curiam* was filed:

"A former judgment obtained by the respondent against the appellant in this case was reversed by this court for an error in the judge's charge. *Ruane, Administrator,* v. *Erie Railroad Co.,* 83 *N. J. L.* 423; affirmed by the Court of Errors and Appeals.

"A second trial between the parties resulted in a verdict for the respondent for $4,000. The trial judge, on application of appellant, allowed a rule to show cause why the verdict should not be set aside as contrary to the weight of the evidence and excessive, and reserved to the appellant the benefit of an exception taken by it at the trial to the refusal of the court to direct a verdict for the respondent. The rule was subsequently discharged upon the respondent agreeing to accept $2,500, and judgment was ordered and entered for that amount against appellant. On this appeal the appellant challenges respondent's right to any recovery against it on the evidence in the cause. The grounds urged by counsel for appellant in the brief for a reversal of the judgment are, firstly, 'that the plaintiff failed to show that the cause of the accident was the negligence alleged in the complaint,' and secondly, 'that the evidence shows that the accident was due to negligence on the part of either the plaintiff's intestate or a fellow-servant of the plaintiff's intestate.'

"It is obvious that if either ground is incontrovertibly supported by the evidence, then in the light of a proper application of legal principles the judgment under review must be reversed. The orderly way to a clear exposition of the questions raised and discussed will be to consider, first, what is

the nature of the negligence that is made the gravamen of the respondent's action.

"The complaint charged that the locomotive engine was carelessly and negligently constructed. There is no proof sustaining this allegation. The complaint further charged that the locomotive engine was so carelessly and negligently inspected and kept in repair and that the appellant employed such negligent and careless persons to perform the duty of keeping the locomotive engine in repair and in safe condition that in consequence of such neglect of duty on part of the appellant, the boiler of the locomotive engine exploded, &c. There was a further allegation that the explosion was the result of appellant putting in use the locomotive engine without first having inspected it to ascertain whether or not it was in a safe condition for use.

"The testimony discloses that the case was tried out by the litigants herein on the issue that the appellant had carelessly put in use a locomotive engine which was defective, out of repair and unfit and unsafe for use, and which condition the appellant might have discovered by a reasonably careful inspection. Morgan was the engineer who operated the locomotive at the time the boiler exploded. This was on the 21st day of October, 1910. Two days prior thereto one Evans ran the locomotive engine from Jersey City to Port Jervis, a distance of eighty-eight miles, and on the trip one of the injectors broke down. Evans says that it appeared to him that the locomotive engine had just come out of the repair shop and had been overhauled. Evans was recalled by the defence, and on his direct examination testified that he reported to the appellant, among other things, that there was some obstruction between the tank and engine, and that the tank needed to be cleaned out and a new strainer to be put in. This report was made on the evening of the 19th of October, and the boiler exploded on the morning of the 21st of the same month. What was done to the locomotive engine during the previous time that it was in the repair shop does not appear.

"Evans testified that the breaking down of the injector indicated that there was trouble in the tank, some obstruction of the flow of water from the tank to the feed pipe.

"It appears that the function of the injector is that of a pump. It pumps the water from the tank into the boiler. This is accomplished through various tubes which work in combination with the injector. If the tubes in any manner become clogged, such a condition will interfere materially with the flow of water into the boiler. The function of a strainer appears to be to prevent foreign matter getting into the tubes and thus interfere with the flow of water from the tank into the boiler in response to the action of the injector. It further appears that it is essential that the flow of water into the boiler be kept up so as not to let it get below the level of the crown sheet, for the reason that when the water gets below the level of the crown sheet, the crown sheet, being exposed to the heat of the fire, will become overheated and the bolts which keep it in place will loosen and drop out, and as a result it will collapse. In the present case, an examination of the locomotive engine after the explosion showed that the crown sheet had been thus exposed and collapsed.

"The appellant undertook to prove that it made a daily inspection of the locomotive engine, but it nowhere appears in the evidence that the tank was cleaned out and a new strainer put in. Nor does it appear that the obstruction between the tank and engine of which Evans complained was removed.

"The fact that the locomotive engine was sent into the repair shop on the evening of October 19th, and that when it was put into use on the morning of the 21st its boiler exploded, made it a jury question whether the appellant exercised reasonable care in making the repairs of the defects which the engineer, Evans, found to exist and reported to the appellant.

"There was evidence, therefore, from which a jury might have reasonably inferred that no new strainer was supplied, and that the tank was not properly cleaned out, and that such condition might have interfered with the injector and caused insufficient water in the boiler.

"But it is said that Morgan, who operated the locomotive engine on the morning that the explosion took place, was negligent, and that he was at the time a fellow-servant of the

respondent's intestate, and therefore his negligence must defeat plaintiff's right of recovery.

"It was permissible for the jury to have inferred from Morgan's testimony that he performed the duties devolved upon him as engineer with reasonable care. If it had incontrovertibly appeared that the duties which were incidental to Morgan's employment had been carelessly or negligently performed by him, and that that was the sole cause which led to the explosion and consequent injury and death of the respondent's intestate, then, under the well-settled legal rule enunciated in *Ingebregsten* v. *North German Lloyd S. Co.,* 57 *N. J. L.* 400, applicable to fellow-servants, the respondent would have been barred of his right of recovery. But if the master's negligence co-operated with that of the servant in producing the injury and damage, then under an equally well-settled rule of law the respondent would not be debarred of his right to a recovery.

"Now, as there was evidence from which the jury might have legitimately inferred that the appellant failed to supply a new strainer and to clean out the tank, duties which rested upon the appellant in order to make the locomotive engine reasonably safe and fit for use, and that by reason of such failure the proper functions of the injector were interfered with and thereby caused insufficient water in the boiler which led to the exposure and overheating of the crown sheet, its consequent collapse and the explosion; therefore, the motion to direct a verdict for the appellant was properly denied.

"Judgment will be affirmed, with costs."

For the respondent, *George L. Record.*

For the appellant, *Collins & Corbin.*

PER CURIAM.

The judgment under review herein should be affirmed, for the reasons expressed in the *per curiam* opinion delivered in the Supreme Court.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, JJ.   10.

*For reversal*—None.